IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JONATHAN W. BLYTHE, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 20-03105-CV-S-WBG ) |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

**ORDER AND OPINION REVERSING COMMISSIONER'S FINAL DECISION DENYING BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS**

Pending is Plaintiff Jonathan Blythe's appeal of Defendant Commissioner of Social Security's final decision denying his applications for disability insurance benefits and supplemental security income. For the following reasons, the Commissioner's decision is REVERSED, and the case is REMANDED for further proceedings.

## I.  BACKGROUND

Plaintiff was born in 1987 and has an associate degree. R. at 16, 24, 43-44, 172, 174. He previously worked as a packager, vacuum plastic forming machine operator, and stock clerk. R. at 24, 48-51, 68. In February 2017, Plaintiff applied for disability insurance benefits and supplemental security income claiming he became disabled on November 1, 2016, and/or June 1, 2012. R. at 10, 74, 86, 172-182, 203, 237.[2] His disability onset date was amended to

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi, Acting Commissioner of the Social Security Administration, is automatically substituted as Defendant in this suit.

[2] Plaintiff's benefit applications alleged a disability onset date of November 1, 2016, but the remainder of the record identifies June 1, 2012, as the onset date. Regardless of which date is accurate, the onset date was later amended.

February 7, 2017.  R. at 10, 37-42.[3]  Defendant's applications were denied, and he requested a hearing before an administrative law judge ("ALJ").  R. at 102-11.

In January 2019, a hearing was held before ALJ Perry L. Franklin.  R. at 33-72.  On March 13, 2019, the ALJ issued his decision, finding Plaintiff is not disabled.  R. at 10-26.  The ALJ concluded Plaintiff has the following severe impairments: "history of peroneal tenosynovitis of the left ankle, small heel spur of the left foot, history of gout, history of chronic kidney disease (stage III), hepatitis C, post-traumatic stress disorder, depressive disorder, generalized anxiety disorder, and attention deficit hyperactivity disorder."  R. at 13.  He determined Plaintiff has the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 416.967(b), except Plaintiff was further limited as follows:

> [H]e can lift and carry twenty pounds occasionally and ten pounds frequently, can stand and/or walk for six hours in an eight hour workday, can sit for six hours in an eight hour workday, can perform no repetitive pushing/pulling with the left lower extremity, no climbing ladders, ropes, and scaffolds, occasional climbing of ramps and stairs, occasional balancing, stooping, kneeling, crouching, and crawling, must avoid concentrated exposure to vibrations and hazards such as unprotected heights and dangerous moving machinery, can perform work requiring no contact with the general public and occasional superficial interaction with co-workers and supervisors.

R. at 18.  Based upon his review of the record, the RFC, and a vocational expert's testimony during the January 2019 hearing, the ALJ concluded Plaintiff could work as a marker and battery assembler, and thus, is not disabled.  R. at 24-25, 68-70.  Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council, which denied his appeal.  R. at 1-3.  He now appeals to this Court.  Doc. 3.

---

[3] By amending the disability onset date to February 7, 2017, Plaintiff was no longer eligible for Title II disability insurance benefits.  R. 10-11, 38-39.  The remainder of this opinion addresses the denial of Plaintiff's application for supplemental security income ("SSI") benefits.

## II.     STANDARD OF REVIEW

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the Commissioner's findings, and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Turpin v. Colvin,* 750 F.3d 989, 992-93 (8th Cir. 2014). This Court must affirm the Commissioner's decision "if substantial evidence in the record as a whole supports [the] decision." *Hilliard v. Saul*, 964 F.3d 759, 761-62 (8th Cir. 2020). The threshold for such evidentiary sufficiency is not high. *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019). "Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion." *Noerper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020) (citation omitted).

In evaluating for substantial evidence, a court must consider evidence supporting as well as detracting from the Commissioner's decision as well as evidence detracting from it. *Anderson v. Astrue,* 696 F.3d 790, 793 (8th Cir. 2015). "As long as substantial evidence in the record supports the Commissioner's decision, [a reviewing court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). If after reviewing the entire record it is possible to draw two inconsistent positions and the Commissioner adopted one of those positions, the court must affirm. *See Anderson*, 696 F.3d at 793.

## III.     DISCUSSION

### A.     Treating Psychologist's Opinions

Plaintiff argues this matter must be reversed and remanded because the ALJ ignored a December 2018 opinion from his treating psychologist, Richard Adams, Psy.D., and the ALJ

3
Case 6:20-cv-03105-WBG   Document 23   Filed 08/31/21   Page 3 of 13

failed to give good reasons for discounting a March 2018 opinion from Dr. Adams.[4] Doc. 11 at 8-17.

**(1)  Applicable Standard**

When determining whether an individual is disabled, an ALJ considers all medical opinions from acceptable medical sources. 20 C.F.R. § 416.927(a)(1).[5] Generally, treating medical sources' opinions are given "more weight" than opinions from non-treating medical providers. *Id*. § 416.927(c)(2).[6] This is because treating medical providers "are…able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id*. The ALJ will give "controlling weight" to a treating provider's "medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id*.

If controlling weight is not given to a treating source's medical opinion, the ALJ must consider certain factors when deciding what weight to give the medical opinion. *Id.* § 416.927(c). These factors include the length, nature, and extent of treatment relationship; frequency of examination; whether the opinion is supported by evidence and explanation; whether the opinion is consistent with the record as a whole; whether the opinion is given by a

---

[4] The record includes opinions from two medical providers named Dr. Adams. Unless otherwise noted, when the Court refers to Dr. Adams, it refers to Plaintiff's treating psychologist, Dr. Richard Adams.

[5] A licensed psychologist is an acceptable medical source. 20 C.F.R. § 416.902(a)(2).

[6] The cited regulations apply to claims, such as Plaintiff's, that were filed before March 27, 2017.

specialist about issues related to his/her area of specialty; and any other factors that "tend to support or contradict the medical opinion." *Id.* § 416.927(c)(2)-(6). If the treating physician's opinion is not entitled to controlling weight, "it should not ordinarily be disregarded and is entitled to substantial weight." *Papesh v. Colvin,* 786 F.3d 1126, 1132 (8th Cir. 2015) (citation omitted). Regardless of the weight afforded a treating source's opinion, the ALJ must review the various factors and "give good reasons" explaining why the ALJ assigned said weight to a treating source's medical opinion. *Id.* § 416.927(c)(2).

**(2)    Dr. Adams's Opinions**

In October 2017, Plaintiff began mental health counseling with Dr. Richard Adams and continued to see him on a weekly or biweekly basis through November 2018. Doc. 11 at 3; Doc. 15 at 7; R. at 453-54, 458-60, 463-64, 468-70, 472-77, 482-89, 495-96, 498-507, 530-32, 538-40, 546-63, 566-80, 586-92, 604-09, 620-23, 629-31, 638-40, 646-48, 654-59, 673-79, 688-92, 851-57. Under the applicable regulations, Dr. Adams is a "treating source" who had a consistent treatment relationship with Plaintiff during the pertinent time frames.

In March 2018, Dr. Adams completed a Medical Source Statement – Mental ("MSSM"), providing his "professional opinion of [Plaintiff's] limitations" based on clinical findings, diagnoses, and treatment. R. at 373-74. He opined that Plaintiff's mental conditions would cause him to leave work prematurely or be absent from work at least four days per month. R. at 373. He also indicated Plaintiff's mental health symptoms would interfere with his attention and cause him to be off task at least twenty-five percent of the time. *Id.*

In addition, Dr. Adams described Plaintiff's limitations related to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. R. at 373-

74. In his opinion, Plaintiff is "extremely limited"[7] in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruption from his symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. R. at 374. He is "markedly limited"[8] in his ability to understand and remember detailed instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or proximity to others without being distracted, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers without distracting them or exhibiting behavioral extremes, set realistic goals, and make plans independently of others. R. at 373-74.

Dr. Adams also opined Plaintiff is "moderately limited"[9] in his ability to understand, remember, and carry out short and simple instructions; make simple work-related decisions; be aware of normal hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation. *Id*. And he is "mildly limited"[10] in his ability to remember locations and work-like procedures, sustain an ordinary routine without special supervision, ask simple questions or request assistance, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and respond appropriately to changes in the work setting. *Id.*

---

[7] "Extremely limited" is defined as "[i]mpairment level preclude[s] useful functioning in this category. Considered to be 3 standard deviations below the norm, or 90% overall reduction in performance." R. at 373.

[8] "Markedly limited" means "[m]ore than Moderate, but less than extreme resulting in limitations that seriously interfere with the ability to function independently. Considered to be 2 standard deviations below the norm, or 60% overall reduction in performance." R. at 373.

[9] "Moderately limited" refers to an impairment level that is "compatible with some, but not all, useful functioning. Considered to be 1 standard deviation below the norm, or 30% overall reduction in performance." R. at 373.

[10] "Mildly limited" is not defined in the MSSM. *See* R. 373-74.

In December 2018, Dr. Adams provided a narrative letter attesting to Plaintiff's "current level of emotional functioning." R. at 851.

> Client has been treated by this psychologist for over the last 12 months. Client's treating diagnosis by this therapist is Posttraumatic Stress Disorder, ADHD inattentive type, and Major Depressive Disorder. Client was referred by this psychologist for a full psychological evaluation and testing conducted by Robert Forsyth, PhD and his evaluation suggested these diagnos[e]s exist along with Bipolar I Disorder. Both Dr. Forsyth and I agree that client's current level of functioning suggests that he is disabled and will continued to be disabled in excess of 12 months. In other words, client's psychological impairments some which are worsened by his Stage III Chronic Kidney Disease and Liver Disease would prevent him from sustaining concentration and meaningful full time employment. In fact, his capacity to finish schooling at this time is in jeopardy which calls into question his ability to even sustain part time employment. If I can be of any assistance in the disability process, please let contact me anytime.

*Id*. This letter accompanied the final records provided by Dr. Adams to the Social Security Administration. R. at 851-57.[11]

### (3) The ALJ's Failure to Discuss Dr. Adams's December 2018 Letter[12]

The ALJ did not discuss Dr. Adams's December 2018 letter, but the parties disagree on whether this failure requires remand. Doc. 11 at 8-10; Doc. 15 at 17-21. The Commissioner concedes the ALJ was required to discuss all medical opinions. Doc. 15 at 17. But he argues remand is not required because the letter was not a medical opinion; rather, it was an opinion on an issue reserved for the ALJ (i.e., whether someone is disabled or unable to work). *Id*. at 17-19. The Commissioner also maintains the December 2018 letter was cumulative and duplicative of Dr. Adams's MSSM. *Id*. at 19-20. Plaintiff agrees a treating medical provider's

---

[11] The record also contains a narrative letter from Dr. Adams dated September 20, 2018, regarding Plaintiff's need for assistance with college classes and test taking. R. at 820. In the letter, Dr. Adams indicates Plaintiff is under his treatment and has "extremely disturbed concentration" and is "easily distracted." Plaintiff does not argue, however, the September 20, 2018 letter is a medical opinion.

[12] This letter was included in the record before the ALJ, and Plaintiff mentioned the letter to the ALJ at the close of the hearing. Specifically, Plaintiff asked the ALJ if he "received the letter from my therapist as evidence." R. at 71. The ALJ responded, "Dr. Adams, yes." *Id*.

opinion as to whether someone is disabled is an issue reserved for the Commissioner; however, he maintains the remainder of Dr. Adams's opinion in the letter should have been considered because it contains a medical opinion. Doc. 11 at 8-10; Doc. 16 at 1-3.

As indicated by the parties, an opinion as to whether an individual is "disabled" or "unable to work" is "an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (quoting *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) and citing 20 C.F.R. § 404.1527(e)(1)); *see also* 20 C.F.R. § 416.927(d)(1). Thus, if a treating provider solely states a claimant is disabled or cannot be gainfully employed, the treating provider's opinion is not considered a medical opinion. *See Stormo*, 377 F.3d at 806. Here, Dr. Adams's December 2018 letter indicated Plaintiff is "disabled" and his symptoms "prevent him from sustaining…meaningful full time employment." R. at 851. But his letter also provided additional information. If any of the additional information provided by Dr. Adams is considered a medical opinion, the ALJ should have considered it.

"A medical opinion is a statement from a medical source about what [a claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" with regard to abilities to perform physical, mental, or other demands of work activities." 20 C.F.R. § 416.913(a)(2). Mental demands for work activity include, but are not limited to, maintaining concentration. *Id.* § 416.913(2)(i)(B). "The Commissioner defers to a treating physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions." *Ellis,* 392 F.3d at 995 (citation omitted).

8
Case 6:20-cv-03105-WBG   Document 23   Filed 08/31/21   Page 8 of 13

In the letter, Dr. Adams notes Plaintiff suffers from posttraumatic stress disorder, attention deficient hyperactivity disorder (inattentive type), major depressive disorder, and bipolar disorder. R. at 851. He also states Plaintiff's "psychological impairments some which are worsened by his Stage III Chronic Kidney Disease and Liver Disease would prevent him from sustaining concentration," and his capacity to complete schooling "at this time is in jeopardy." *Id*. These statements provide Dr. Adams's opinion on Plaintiff's psychological impairments, including his inability to sustain concentration. *Id.* Pursuant to the applicable regulations, Dr. Adams's December 2018 contains a medical opinion. Consequently, the ALJ was required to consider the portion of Dr. Adams's letter containing a medical opinion. *See* 20 C.F.R. § 416.927(b) ("In determining whether you are disabled, we will always consider the medical opinions in your case record…."); *McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (holding the ALJ was required to consider and weigh all medical opinions). For this reason alone, the Court reverses the Commissioner's decision and remands this matter so that Dr. Adams's December 2018 opinion is considered and weighed.

**(4) The ALJ's Discussion of Dr. Adams's MSSM Opinion**

The ALJ assigned "little weight" to Dr. Adams's MSSM opinion because it was "not consistent with his own treatment notes" and was "minimally consistent with the record." R. at 22. To support the weight afforded to Dr. Adams's opinion, the ALJ cites only ten pages of medical records. R. at 22-23 (citing R. at 361, 369, 381, 468, 505, 525, 530, 544, 601-02).[13] Although he found Dr. Adams's opinion was "not consistent with his own treatment notes," the ALJ cited only three of Dr. Adams's treatment notes. R. at 468, 505, 530. First, the ALJ

---

[13] The records cited by the ALJ include two nephrology appointments, a mental health evaluation consisting of an intellectual and personality evaluation performed by Dr. Robert Forsyth, two psychiatric appointments with Dr. Angela Olomon, and the consultative examination performed by Dr. Brooke Whisenhunt.

9

Case 6:20-cv-03105-WBG   Document 23   Filed 08/31/21   Page 9 of 13

indicated Plaintiff's concentration is "intermittently intact," citing his initial appointment with Dr. Adams. R. at 22. However, during this appointment, Dr. Adams observed Plaintiff's "[c]oncentration and attention appear both to be disturbed." R. at 505, 558. Second, the ALJ cited a January 2018 appointment where Plaintiff informed Dr. Adams that he traveled to Texas for the holidays and spent time with friends. R. at 22-23, 468. Third, and similarly, the ALJ pointed to a November 2018 appointment to show Plaintiff socializes with friends. R. at 22-23, 530. While these records indicate Plaintiff socialized with his friends on a couple occasions,[14] they do not undermine Dr. Adams's opinion that Plaintiff is markedly limited in his ability to interact with members of the general public. These three records are not inconsistent with Dr. Adams's MSSM opinion.

In addition, the other seven records cited by the ALJ do not establish Dr. Adams's opinion is "minimally consistent with the record." R. at 22. Two records are from Plaintiff's appointments regarding his chronic kidney disease in March 2017 and June 2017. R. at 361, 381. During these appointments, the nurse practitioner indicated Plaintiff denied anxiety and depression. *Id*. In addition to these appointments focusing on Plaintiff's physical ailments, they took place several months before Plaintiff began seeing Dr. Adams. *Id*.

Another record cited by the ALJ is from a consultative examination conducted by Brooke Whisenhunt, Ph.D.[15] R. at 366-69. Dr. Whisenhunt observed Plaintiff's "attention and concentration were fair to adequate" and "[h]e seemed able to sustain concentration and

---

[14] Other records demonstrated Plaintiff has a very limited range of interests and few friends. R. at 367 (Dr. Whisenhunt evaluation), 526 (Dr. Forsyth evaluation), 678 (Dr. Adams's counseling session). Plaintiff also testified at the hearing, "I don't really have any friends anymore." R. at 59.

[15] Dr. Whisenhunt saw Plaintiff on April 24, 2017, which was several months before Plaintiff began seeing Dr. Adams in October 2017 for mental health counseling. R. at 366. Further, Dr. Whisenhunt noted there were no records available for review at the time she performed the consultative examination. *Id*.

persistence on easy tasks." *Id*. at 369. Her assessment after a single consultative examination, although less severe, is not wholly inconsistent with Dr. Adams's opinion. The ALJ also cited a mental health testing evaluation performed by Robert Forsyth, Ph.D. R. at 525. While Dr. Forsyth noted Plaintiff's memory was adequate, he also indicated Plaintiff's "[j]udgment and insight are only partial," and Plaintiff "struggles with attention, concentration[,] mental focus difficulties…." R. at 525-26.[16]

The remaining three records cited by the ALJ are from psychiatrist Angela Olomon, D.O. R. at 544, 601-02. While Dr. Olomon observed Plaintiff's memory was "good" during the appointments, she also reported his thought process was ruminative, mood was dysphoric and anxious, affect was sad and anxious, and attention and concentration were fair. R. at 544, 601-02.

Contrary to the ALJ's findings, Dr. Adams's treatment notes support his opinion. For example, Dr. Adams observed Plaintiff "appears to have deficits in recent and immediate memory secondary to disturbed concentration and attention and appears to have holes in remote memories….," "has ongoing problems sustaining concentration," "presents all the time to therapy with disturbed concentration," and "has a very difficult time sustaining attention and is easily distracted." R. at 507, 555, 678, 853, 855; *see also* R. at 463, 495, 558, 566, 569, 620, 629-30, 638-39. In addition, other medical professionals' opinions support Dr. Adams's opinion. R. at 526 (noting Plaintiff's "working memory" is "low average to average"); R. at

---

[16] In addition to a clinical interview with Plaintiff, a medical and psychosocial history review, and a collateral interview, Dr. Forsyth administered several tests including the Wechsler Adult Intelligence Scale-IV, the Wide Range Achievement Test-3, the Complex Figure Test, the Lateral Dominance Examination, the Thematic Apperception Test, and the Sentence Completion Test. R. at 526. Dr. Forsyth found Plaintiff showed significant indications of posttraumatic stress disorder and rapid cycling bipolar mood disorder. *Id*. He also concluded Plaintiff suffers from both mania and depression. *Id*. Other than citing to select records of Dr. Forsyth in a brief discussion of the weight to be assigned to the opinion of Dr. Adams, the ALJ did not otherwise analyze or weigh Dr. Forsyth's opinion.

544, 584, 602, 662 (observing Plaintiff's concentration and attention were "fair"); R. at 635 ("He also struggles with attention, concentration[,] mental focus difficulties related to his anxiety."); R. at 818 ("He does not seem able to sustain his concentration and persistence on simple tasks.").

Because both reasons proffered by the ALJ for discounting Dr. Adams's opinion are not supported by substantial evidence in the record, the ALJ failed to provide "good reasons" for the weight given to Dr. Adams's opinion. 20 C.F.R. § 416.927(c)(2). For this additional reason, the Court reverses the Commissioner's decision and remands this matter. Upon remand, the ALJ must reconsider and reweigh Dr. Adams's opinion. If controlling weight is not assigned to the Dr. Adams's opinion, the ALJ is required to consider the factors set forth in 20 C.F.R. § 416.927(c). Regardless of the weight afforded Dr. Adams's opinion, the ALJ must provide "good reasons" for the weight given. If the ALJ assigns more than little weight to Dr. Adams's opinion and/or the ALJ concludes Plaintiff's functional capacity is further limited by his mental health symptoms, the ALJ shall reevaluate the other medical opinions in the record and the RFC.

**B.     Plaintiff's Subjective Complaints**

In addition to the foregoing, Plaintiff argues this matter should be remanded because the ALJ failed to properly consider his subjective complaints about this mental health symptoms. Doc. 11, at 17-21. When evaluating a claimant's subjective complaints, the ALJ "must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions." *Schwandt v. Berryhill*, 926 F.3d

1004, 1012 (8th Cir. 2019) (citations omitted); *see also* 20 C.F.R. § 416.929(c)(3). Further, the "ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (citation omitted). In this matter, the ALJ concluded the objective medical evidence, objective findings, and daily activities did not support Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms. R. at 19-22.

As set forth *supra*, section III(A), the Court reverses the Commissioner's final decision and remands the matter for further proceedings related to Dr. Adams's opinions. If the ALJ finds more than little weight should be assigned to Dr. Adams's opinions, Plaintiff's subjective complaints regarding his mental limitations must be reevaluated. Also, if on remand Plaintiff's RFC is found to be more limiting than the RFC identified *supra*, section I, the ALJ shall reexamine Plaintiff's subjective complaints.

### IV. CONCLUSION

For the foregoing reasons, the Court finds the substantial evidence in the record as a whole does not support the ALJ's decision. Accordingly, the Commissioner's decision is **REVERSED**, and the matter is **REMANDED** for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

DATE: August 31, 2021         /s/ W. Brian Gaddy
                              W. BRIAN GADDY
                              UNITED STATES MAGISTRATE JUDGE